**AUTOMOBILE TRANSPORT CHAUFFEURS, DEMONSTRATORS & HELPERS, LOCAL UNION NO. 604, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, an unincorporated labor organization, Plaintiff,**

v.

**PADDOCK CHRYSLER–PLYMOUTH, INC., a corporation, Defendant.**

**No. 73 C 613(3).**

United States District Court, E. D. Missouri, E. D.

Sept. 18, 1973.

Levin & Weinhaus, St. Louis, Mo., for plaintiff.

Gerald Tockman, Peper, Martin, Jensen, Maichel & Hetlage, and Dallas W. Cox, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

WANGELIN, District Judge.

The Court has before it the application of the plaintiff, Local Union No. 604, for a temporary injunction. A temporary restraining order was granted on September 6, 1973, based upon a verified complaint and certification. The Court has been advised as to the pendency of an unfair labor practice charge arising from the same fact situation filed with the National Labor Relations Board, case No. 14 CA 7574.

An evidentiary hearing on this application was held on September 14, 1973.

The evidence disclosed the following facts.

### Findings of Fact

1. Plaintiff, Automobile Transport Chauffeurs, Demonstrators & Helpers Local Union No. 604 (herein known as Plaintiff Union), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is an unincorporated association comprised of persons employed in the sale and distribution of new and used vehicles, and that it is a labor organization representing employees in an industry affecting commerce as defined in 29 U.S.C. § 152(5).

2. Defendant, Paddock Chrysler-Plymouth, Inc., is an employer-member of the Greater St. Louis Automotive Association, Inc., a voluntary incorporated association of automobile dealers.

3. On or about the 8th day of January, 1972, plaintiff union and defendant employer entered into a collective bargaining agreement which is presently in full force and effect and will not expire until the 31st day of January, 1975, and such agreement covers the employees of defendant engaged in the selling of new and used motor vehicles.

4. This collective bargaining agreement provides for a six man joint employer-union committee which renders a non-final, non-binding disposition.[1] This is contrary to the verified com-

[1] ARTICLE VIII
*Grievance Procedure and Strike Clause*
1. During the term of this Agreement, the Employer will not cause any lockouts nor will the Union cause any strikes, stoppages, suspension of work until the procedures prescribed by Section 2 of this Article, the same relating to the handling and adjustment of grievances shall have been exhausted, and said procedures shall be available to both Employer and Union.
2. The term "Grievance" shall mean a dispute or difference involving the application or interpretation of any provision of this Agreement. Should grievance occur, the Shop Steward shall first endeavor to adjust same with the foreman, and, if not thus satisfactorily adjusted, such grievance shall be brought to the attention of the management by the Steward or Business Representative. If such grievances are not thus satisfactorily adjusted, or if the Employer has a grievance, the same shall be referred to a committee for mediation consisting of three representatives of the Union and three representatives of the Employer, who shall be members of and appointed by the Employer and who are parties to a like agreement.
However, upon formal application for this committee to act, the said committee for mediation must render their decision within fifteen (15) days from official notice by CERTIFIED OR REGISTERED MAIL, unless an extension is mutually agreed to by both parties.

plaint's averment that such committee provides for a "final disposition in the nature of arbitration."

5. Nowhere in the agreement is it provided that the parties are contractually bound to arbitrate, nor does the agreement provide for the power to order arbitration.

6. In September of 1972, there arose a dispute between members of plaintiff union and defendant concerning conditions of employment and after preliminary procedures such dispute was submitted to a committee for mediation in accordance with Article VIII of the Collective Bargaining Agreement, whereupon, a tie vote resulted and a strike vote was taken, though a strike was voted down. This prior incident demonstrates to the Court that the grievance procedures do not necessarily result in a final, binding decision as averred in plaintiff's verified complaint.

7. On or about August 6, 1973, District No. 9, International Association of Machinists and Aerospace Workers (mechanics and machinists) engaged in a strike and walkout against members of the Greater St. Louis Automotive Association, Inc., and in response to that strike and a threatened strike by Teamsters Local Union No. 618 (parts men), members of the Greater St. Louis Automotive Association, Inc., including defendant, engaged in a defensive lockout of all District No. 9 and Local Union No. 618 members employed by Greater St. Louis Automotive Association, Inc.

8. On or about August 6, 1973, members of the plaintiff union employed by defendant informed defendant that said members would honor the picket lines of the aforesaid striking employees in accordance with Article VIII of the Collective Bargaining Agreement and would not work for the duration of the strike. No work was performed by members of the plaintiff union on the premises of the defendant for the duration of the strike.

9. On Tuesday morning, September 4, 1973, after the picket lines were removed, members of plaintiff union reported for work, but were informed by the defendant that The Greater St. Louis Automotive Association, Inc., had not yet ratified the new collective bargaining agreement with the members of District No. 9 (mechanics) and defendant would notify them as to the availability of work according to seniority.

10. Late September 4th, 1973, the labor disputes between defendant and District No. 9 and Local Union No. 618 were resolved by the execution of a new collective bargaining agreement.

11. On September 5, 1973, two members of plaintiff union, Blaesing and Stotler, were returned to work by defendant in accordance with the principle of seniority as stated in Article II, Section 2 of the Collective Bargaining Agreement. This is contrary to the verified complaint's averment that "all" salesmen had been locked out.

12. On September 6, 1973, the plaintiff union filed with this Court a verified complaint requesting a temporary restraining order be issued to enjoin defendant's alleged illegal lockout and such temporary restraining order was granted at 10:15 a. m. on September 6, 1973.

13. Defendant employer was notified as to the grievances of the members of the plaintiff union on September 8, 1973. This is contrary to plaintiff's verified complaint dated September 6, 1973, stating that the defendant had refused to submit the disputes to said grievance procedure.

14. The Court can find no evidence of irreparable harm as alleged in plaintiff's verified complaint.

### Conclusion of Law

The Court finds that the plaintiff has not met the requirements for injunctive relief against concerted activity as provided by Section 7 of the Norris-LaGuardia Act and Section 301(a) of the Labor Management Relations Act as interpreted by the United States Supreme Court in Boys Markets, Inc. v. Retail Clerks, 398 U.S. 235, 90 S.Ct. 1583, 26

L.Ed.2d 199 (1970), where the Court said:

[a] District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. Id. at 254, 90 S.Ct. at 1594.

To particularize, the Court finds that the instant case is not one where an injunction would be appropriate despite the Norris-LaGuardia Act; that the contract does not provide for arbitration and that the principles of equity, namely occurring and continuing breaches, irreparable injury, and the balancing of hardships, do not warrant the issuance of an injunction.

The temporary restraining order previously granted and ordered on the 6th day of September, 1973, was improvidently granted because of the gross contradictions in the verified complaint and the actual facts. Therefore, such order shall be dissolved as of 9:45 p. m., the 14th day of September, 1973. Accordingly,

It is hereby ordered that the plaintiff's application for a preliminary and permanent injunction be and is denied with the cost assessed to plaintiff.